# NATIONAL LIFE INSURANCE COMPANY *v*. HEADRICK ET AL.

[No. 9,023.   Filed May 9, 1916.   Rehearing denied October 26, 1916.]

1.   TRIAL.—*Verdict.*—*Construction.*—The verdict of a jury for the plaintiff is a finding for plaintiff of every fact essential to a recovery.   p. 58.

2.   APPEAL.—*Review.*—*Evidence.*—*Sufficiency.*—Where there is evidence from which the facts found by a verdict that are essential to a recovery may have been reasonably inferred by the jury, the evidence is sufficient on appeal, even though other and contrary inferences may be reasonably drawn therefrom.   p. 58.

3.   PRINCIPAL AND AGENT.—*Ratification.*—Ratification means the adoption of that which was done for and in the name of another without authority, and, when ratification takes place, the act stands as an authorized one and makes the whole act, transaction, or contract good from the beginning.   p. 58.

4.   PRINCIPAL AND AGENT.—*Ratification.*—*Evidence.*—Ratification is a question of fact which may ordinarily be inferred from the conduct of the parties, and the acts, words, silence, dealings and knowledge of the principal, as well as many other facts and circumstances, may be shown as evidence tending to warrant the inference or finding of the ultimate fact of ratification.   p. 58.

5.   PRINCIPAL AND AGENT.—*Ratification.*—*Acceptance of Benefits.*—*Estopped.*—Knowingly accepting benefits of an unauthorized employment amounts to a ratification of such contract of employment, and is in the nature of an estoppel to deny the authority to make such contract.   p. 58.

6.   PRINCIPAL AND AGENT.— *Ratification.*— *Corporations.*— *Acts of Officers.*—Ratification by a corporation, which can act only through its officers and agents, may be shown by conduct without any formal action by its board of directors, and may be

inferred from affirmation, from passive acquiescence, or from the receipt of benefits with knowledge. p. 58.

7. PRINCIPAL AND AGENT.—*Ratification.*—*Knowledge.*—*Evidence.*— Where it is sought to show ratification of an unauthorized act, transaction, or contract by the fact that benefits have been knowingly accepted, knowledge, like other facts, need not be proven by a particular kind or class of evidence, and may be inferred from facts and circumstances. p. 58.

8. APPEAL.— *Review.*— *Incomplete Instructions.*— Where the instructions given, although incomplete, were correct as far as they went, appellant, having failed to present more complete instructions on the subject, cannot on appeal object for that reason. p. 59.

From Marion Superior Court (93,009); *Charles J. Orbison,* Judge.

Action by William D. Headrick and others against the National Life Insurance Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*Charles W. Miller, Henry M. Dowling* and *J. B. Boyer,* for appellant.

*Headrick & Ruick,* for appellees.

FELT, P. J.—This suit originated before a justice of the peace where a judgment was rendered for $100 for legal services alleged to have been rendered appellant at its special instance and request. From the judgment an appeal was taken to the Marion Superior Court where the case was tried by a jury on an issue formed by a general denial of all the averments of the complaint. The jury returned a verdict for appellees in the sum of $95, and also answers to interrogatories. From a judgment on the verdict appellant has appealed and assigned as error the overruling of its motion for a new trial, and certain other alleged errors which are not grounds for independent assignments of error but causes for a new trial. A new trial was asked on the grounds that the court erred in giving the jury certain instructions; that the verdict is not sustained by sufficient evidence; that it is contrary to law; that the assessment of

the amount of recovery is erroneous in that the verdict is too large.

In its brief appellant states that: "The theory ultimately relied on by appellees and adopted by the trial court was that the employment of appellees was not authorized by appellant, but that it ratified it. The theory, therefore, is that of ratification, and this is the theory of the case which must be adopted by the Appellate Court." This proposition is not denied by appellees but they contend that the services were rendered with the knowledge and approval of appellant under such circumstances as to show an acceptance of the benefit of the services by appellant, and a ratification of the employment. There is ample evidence to show the rendition and value of the services, but the question of ratification is sharply controverted. There is no denial of the fact that services were rendered in connection with the business of appellant under an employment or arrangement by and between appellees and one V. C. Vette, who was at the time general manager of the railroad accident department of appellant at Indianapolis, but it is contended that he held such position under a written contract which did not authorize him to bind appellant by any contract for the employment of attorneys.

The evidence tends to show that appellant's principal office was in Chicago; that Mr. A. M. Johnson was president of the company during 1911 and up to April, 1912; that Mr. Vette was acquainted with Mr. Johnson and in the summer of 1911 appellee Ruick and Mr. Vette attended a convention of insurance commissioners or state officials appointed by the governors of the several states held in Milwaukee and while there Mr. Vette introduced Mr. Ruick to Mr. Johnson, and in conversation with him in the presence of Mr. Ruick informed him that, if they consummated their contemplated arrangement for Mr. Vette to represent the company, "We will expect to have Mr. Ruick as our attorney," to which Mr. Johnson answered, "Yes, that is all

right''; that during the time the services of appellees were being rendered Mr. Vette spent part of his time in his Indianapolis office and part of the time in the Chicago office of appellant; that Mr. Hallman was chief clerk in appellant's accident department and Mr. J. B. Boyer was attorney for that department; that one C. H. Boyer was general manager of appellant's casualty department which included the railroad department.  One Howard Beecham testified that he had worked for Mr. Vette and had also been employed in appellant's Chicago office and worked in the accident department from November, 1911, to the latter part of March, 1912, under Mr. C. H. Boyer and also under instructions of Mr. Vette; that Vette had charge of the railroad department at Indianapolis after January 1, 1912; that he heard the names of appellees mentioned by Mr. Hallman and Mr. J. B. Boyer in connection with the business of appellant in the Chicago office a number of times; that on one occasion Mr. Hallman told him that they were sending some proofs back to Indianapolis to be examined and discussed by Mr. Vette and appellee Ruick; that Mr. Hallman and Mr. J. B. Boyer spoke of appellee as attorneys for the railroad department.  The evidence also tends to show that in 1912 Mr. Vette traveled back and forth between Chicago and Indianapolis frequently in transacting the business of his department, and in his absence from Indianapolis Mr. Ruick attended to any business of appellant that needed attention; that Mr. J. B. Boyer and Mr. Ruick, in January, 1912, had communication about printed matter to be used by the company in its business, Mr. Boyer being at the time in Chicago and Mr. Ruick in Indianapolis; that Mr. Vette severed his connection with appellant the latter part of April, 1912.  Mr. Vette testified that the services of appellees were rendered for appellant and not for him personally; that appellees made out their bill against appellant and handed it to him with a request that he see that it be paid by the company.

The verdict of the jury is a finding for appellees of every fact essential to a recovery. If there is evidence from which such facts may have been reasonably inferred by the jury, it is sufficient on appeal, even though other and contrary inferences may be reasonably drawn therefrom. *Abelman* v. *Haehnel* (1914), 57 Ind. App. 15, 21, 103 N. E. 869; *Parkison* v. *Thompson* (1904), 164 Ind. 609, 620, 626, 73 N. E. 109, 3 Ann. Cas. 677.

Ratification means the adoption of that which was done for and in the name of another without authority. It is in the nature of a cure for lack of authorization. When ratification takes place the act stands as an authorized one and makes the whole act, transaction, or contract good from the beginning. Ratification is a question of fact and ordinarily may be inferred from the conduct of the parties. The acts, words, silence, dealings and knowledge of the principal as well as many other facts and circumstances may be shown as evidence tending to warrant the inference or finding of the ultimate fact of ratification. 1 Mechem, Agency §§347-349, 430-434; *Indiana Union Traction Co.* v. *Scribner* (1910), 47 Ind. App. 621, 630, 93 N. E. 1014; *Minnich* v. *Darling* (1893), 8 Ind. App. 539, 544, 36 N. E. 173. Knowingly accepting benefits of an unauthorized employment amounts to a ratification of such contract of employment, and is in the nature of an estoppel to deny the authority to make such contract. Ratification by a corporation may be shown by conduct without any formal action of its board of directors. Corporations act only by and through their officers and agents and ratification may be inferred from affirmation or from passive acquiescence, or from the receipts of benefits with knowledge. Knowledge like other facts need not be proven by any particular kind or class of evidence and may be inferred from facts and circumstances. *Indiana Union Traction Co.* v. *Scribner, supra,* pp. 629, 630 and authorities cited; *Wilson* v.

*McKain* (1895), 12 Ind. App. 78, 80, 39 N. E. 886; *American Quarries Co.* v. *Lay* (1905), 37 Ind. App. 386, 392, 73 N. E. 608; *Voiles* v. *Beard* (1877), 58 Ind. 510, 511. The jury inferred from the evidence the ultimate fact of ratification by appellant of the employment on its behalf of appellees by appellant's agent, Vette. Other and different inferences might reasonably have been drawn from the evidence, but we cannot say there is a total lack of evidence warranting the inference drawn by the jury.

Some objections are urged to the instructions, but a careful reading and study of all the instructions show that they state the law substantially correctly and the jury

8. could not have been misled by them. If some of them were incomplete, they were correct as far as they went, and appellant, having failed to present more complete instructions on the subject, cannot be heard now to object for such reason. Other questions suggested are waived by failure to present them in the briefs. We find no reversible error. Judgment affirmed.

NOTE.—Reported in 112 N. E. 559. See under (3, 4) 5 Am. St. 109; 31 Cyc 1245, 1263, 1283; 2 C. J. 467, 489, 516; (5) 31 Cyc 1267; 2 C. J. 493; (6) 10 Cyc 1072, 1076, 1078; (7) 31 Cyc 1253, 1641; 2 C. J. 480, 922.