STATE EX REL. GUARANTY BUILDING AND LOAN
COMPANY *v.* WILEY ET AL.

[No. 15,088.   Filed June 3, 1935.]

*Robert M. Van Atta,* and *Mart J. O'Malley,* for appellant.

*Bowers, Feightener & Bowers,* for appellee.

KIME, J.—This was an action by a complaint in one paragraph to recover damages for breach of a statutory bond executed by appellees in favor of the building and loan company. The specific charge was that Wiley, while secretary-treasurer of the building and loan company, purchased certain debentures of the General Theatre Equipment, Inc., without authority of the

board of directors as alleged to have been necessary as per the by-laws.

The appellees pleaded a general denial and estoppel by reason of the fact that the acts of Wiley had been approved by subsequent ratification and acceptance of benefits thereunder.

The court, upon proper request, found the facts specially and rendered conclusions of law thereon, first, that the law is with the defendants and that plaintiff is not entitled to recover, and second, that defendants are entitled to recover costs. This appeal is perfected upon an assignment of error that the court erred in its first and second conclusions of law.

The finding of facts necessary to a decision of this case were as follows: that the loan company was organized under the Rural Saving and Loan Act; that the stockholders held a meeting before incorporation and discussed and agreed upon and adopted by-laws, among which was: "Section XXXIII. Should there, at any time, be money in the treasury, not called for by borrowing or withdrawing members, the Board of Directors, on recommendation of the Finance Committee, may loan or invest the same upon such rates, terms and securities as the Board may from time to time prescribe." That the board of directors' minutes of a meeting contained the following: "Minutes of meetings of March 27, April 17 and April 19, were read and upon motion of Ben Larrimer, seconded by Harry Goldthwaite and carried same were approved." That the meeting on March 27 was adjourned until April 1 and concluded on that day. That there was no finance committee appointed from March 7, 1927, to December 31, 1930; that Wiley was the duly elected, qualified, and acting secretary from October, 1925, to June 1, 1931, and sometimes during that period the treasurer; that he gave the bond in question; that such bond was an of-

ficial bond required by statute; that Wiley, as secretary, on March 7, 1927, invested $5,000.00 without the prior order of the board of directors and from time to time thereafter invested other funds; that on May 8, 1930, after consulting with the president of the loan company and obtaining his consent and approval, he invested $3994.67 of the funds of the corporation in General Theatre Equipment, Inc. 6% convertible debenture bonds of the par value of $4,000.00. That in October, 1930, the General Theatre Equipment, Inc. paid to the loan company the sum of $120.00 as the semi-annual interest on said bonds and again in April, 1931, paid a like amount for the same purpose; that these amounts were credited into the earnings of the loan company. Finding of fact number 8 discloses: "That the board of directors of said corporation had knowledge of all of said investments, and of the collection of all interest items thereon, including the interest on said General Theatre Equipment, Inc. bonds, and never made any objection thereto or criticism thereof, but at all times, until December 31, 1930, acquiesced therein." That this purchase was made without a prior order thereof made of record by the board of directors.

The statute provides that the power to make and amend the by-laws shall be in the board of directors. §5131, Burns 1926, §18-2806, Burns 1933, §8112, Baldwin's 1934. Where the stockholders proposed certain by-laws, as shown by the findings of fact, and the board of directors approved their acts, it means that the board of directors adopted the by-laws as proposed by the stockholders. Since the board of directors have power to adopt the by-laws they, of necessity, have the power to waive the by-laws unless this right is restricted by statute. 8 Fletcher Ency. Corp. §4200 page 771; *Farmers State Bank* v. *Haun* (1923), 30 Wyo. 322, 222 Pac. 45; *Bank of Holly*

*Springs* v. *Pinson* (1880), 58 Miss. 421, 38 Am. Rep. 330; *National Life Ins. Co.* v. *Headrich* (1916), 63 Ind. App. 54, 112 N. E. 559; *Indianapolis, etc.* v. *St. Louis, etc. R. Co.* (1887), 120 U. S. 256, 7 Sup. Ct. Rep. 542; *Pittsburgh, etc. R. Co.* v. *Keokuk, etc. Bridge Co.* (1889), 131 U. S. 371, 33 L. Ed. 157, 9 Sup. Ct. Rep. 770. This investment was made by the secretary-treasurer by and with the advice and consent of the president. The findings specifically show that there was no finance committee in existance. The corporation accepted the interest on the investments and the reports made by the secretary-treasurer were approved by the board of directors in several different meetings and by the stockholders in at least one meeting.

This court has said in at least two cases that acts of this kind may be ratified. In *National Life Ins. Co.* v. *Headrich, supra,* the court said (p. 58) : "Ratification means the adoption of that which was done for and in the name of another without authority. It is in the nature of a cure for lack of authorization. When ratification takes place the act stands as an authorized one and makes the whole act, transaction, or contract good from the beginning. Ratification is a question of fact and ordinarily may be inferred from the conduct of the parties. The acts, words, silence, dealings, and knowledge of the principal as well as many other facts and circumstances may be shown as evidence tending to warrant the inference or finding of the ultimate fact of ratification. 1 Mechem, Agency, Secs. 347, 349, 430, 434; *Indiana Union Traction Co.* v. *Scribner* (1910), 47 Ind. App. 621, 630, 93 N. E. 1014; *Minnich* v. *Darling* (1893), 8 Ind. App. 539, 544, 36 N. E. 173. Knowingly accepting benefits of an unauthorized employment amounts to a ratification of such contract of employment, and is in the nature of an estoppel to deny the authority to make such contract. Ratification by a cor-

poration may be shown by conduct without any formal action of its board of directors. Corporations act only by and through their officers and agents and ratification may be inferred from affirmation or from passive acquiescence, or from the receipts of benefits with knowledge. Knowledge like other facts need not be proven by any particular kind or class of evidence and may be inferred from facts and circumstances. *Indiana Union Traction Co.* v. *Scribner, supra,* pp. 629, 630 and authorities cited; *Wilson* v. *McKain* (1895), 12 Ind. App. 78, 80, 39 N. E. 886; *American Quarries Co.* v. *Lay* (1905), 37 Ind. App. 386, 392, 73 N. E. 608; *Voiles* v. *Beard* (1877), 58 Ind. 510, 511."

In *Bossart* v. *Geis* (1914), 57 Ind. App. 384, 392, 107 N. E. 95, an action wherein the ratification of an officer's unauthorized act was involved, this court said: "In deciding this question we are not losing sight of the fact that, as a general rule, the president of a corporation has no power to bind the company by incurring indebtedness, or by his signature to commercial paper, unless the authority to do so is expressly conferred by the articles of incorporation or by-laws, or by an order of the board of directors. *Elkhart Hydraulic Co.* v. *Turner* (1908), 170 Ind. 455, 459, 84 N. E. 812; *Louisville, etc. R. Co.* v. *McVay* (1884), 98 Ind. 391, 393, 49 Am. Rep. 770; *National State Bank* v. *Vigo County Nat. Bank* (1895), 141 Ind. 352, 355, 40 N. E. 799, 50 Am. St. 330; 2 Thompson, Corporations §§1454, 1455, 1458, 1460, 1465, 1468, 1473, 1478, 1485. But it is also true that the authority of a president or other officer of a corporation may be conferred other than by express action of the board of directors. It may be shown that the president for a long time prior to the transaction in question acted as the chief executive officer of the company; that he executed the notes and other contracts of the company and had general charge of its

business with the full knowledge and acquiescence of the directors; that he had habitually been permitted to borrow money, or that he had furnished it, for the company. Likewise, if warranted by the issues it may be shown that his acts had been ratified by the board of directors, or that the company was estopped to question the validity of his acts by having received and used the money in the payment of the debts of the company. *National State Bank* v. *Sanford Fork, etc., Co.* (1901), 157 Ind. 10, 15, 60 N. E. 699; *Elkhart Hyrdraulic Co.* v. *Turner, supra; National State Bank* v. *Vigo County Nat. Bank, supra;* 2 Thompson, Corporations Secs. 1257, 1515." See also *Pittsburgh, etc. R. Co.* v. *Keokuk, etc. Bridge Co., supra.* Thompson on Corporations 3rd. edition, §§2140 to 2148, more especially 2145 to 2148 and cases there cited.

Finding no reversible error the judgment of the Huntington Circuit Court is affirmed.